IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Kenneth Michael Barfield, | C/A No.: 3:13-3569-TLW-SVH |
| Plaintiff, | |
| vs. | REPORT AND RECOMMENDATION |
| Kershaw County Sheriff's Office and Aaron Threatt, | |
| Defendants. | |

Plaintiff Kenneth Michael Barfield brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. He sues Kershaw County Sheriff's Office ("KCSO") and KCSO deputy Aaron Threatt (collectively "Defendants"). This matter is before the court on Defendants' motion for summary judgment [ECF No. 10]. This motion having been fully briefed [ECF No. 11], it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(f) (D.S.C.). Because this motion is dispositive, this report and recommendation is entered for review by the district judge. For the following reasons, the undersigned recommends Defendants' motion for summary judgment [ECF No. 10] be granted.

I.      Factual Background[1]

    A.      Threatt's Version of Events

Threatt states he was dispatched to 1854 Winchester Road in Kershaw County, South Carolina on November 26, 2011, to respond to a noise complaint to 911 received from Plaintiff's neighbor, Ms. Kelly. Threatt Dep. at 10:2–3, 14:4–17.[2] Ms. Kelly told Threatt that Plaintiff was in his yard yelling and cussing, and it was disturbing her household. [ECF No. 10-2 at 1]. Threatt had previously responded to calls concerning a feud between Plaintiff and Ms. Kelly. Threatt Dep. at 14:25–15:5. Threatt informed Ms. Kelly that he could not do anything about Plaintiff's yelling and cussing because he did not hear or see him. *Id.* at 16:10–23.

Threatt states that later that evening, he received a phone call from Ms. Kelly who reported that Plaintiff was again yelling and cussing. Threatt Dep. at 18:13–25. Threatt proceeded toward Plaintiff's property and parked within a few hundred yards from Plaintiff's residence with his headlights off. [ECF No. 10-2 at 1]. Threat testified that he heard Plaintiff yelling from an area between Plaintiff's house and a shed/shop in the yard. [ECF No. 11-1 at 9–10]. Threatt recognized Plaintiff's voice because he had observed Plaintiff being loud and boisterous when he had responded to complaints between the

---

[1] Defendants do not acknowledge Plaintiff's version of the facts as he testified in his deposition. Plaintiff, on the other hand, mischaracterizes the record before the court. For instance, Plaintiff asserts that Threatt testified that he heard Plaintiff crowing "'like a rooster'" [ECF No. 11 at 2] and that Plaintiff and his wife both testified that Plaintiff never went outside, was in bed asleep at the time of the alleged offense, and never made a noise outside [ECF No. 11 at 5]. Such allegations of fact are not supported by the evidence provided.

[2] Threatt's deposition can be found at ECF No. 10-3, unless otherwise cited.

neighbors in the past. *Id*. Threatt drove to Plaintiff's property and began knocking on the doors and windows around the house. Threatt Dep. at 26:5–14. Plaintiff came to the door fully dressed and then walked onto the porch. *Id*. at 26:15–19, 27:15–16. Threatt explained to Plaintiff that he had heard Plaintiff yelling and that he was arresting Plaintiff for breach of peace. *Id.* at 27:17–20. Threatt placed Plaintiff in handcuffs and they walked to Threatt's patrol car. *Id.* at 31:6–22. Upon arriving at the car, Plaintiff stood in the door jam and intentionally fell to the ground and landed on his back. *Id.* at 32:2–10.

B.     Plaintiff's Version of Events

Plaintiff stated he was watching a football game on November 26, 2011. Pl. Dep. at 12:1–7, 71:13–24.[3] After the football game ended, Plaintiff cleaned the kitchen and went to bed. *Id.* Plaintiff, who was sleeping in shorts and a t-shirt, was awakened by "someone beat[ing] about [his] house." *Id.* at 12:21, 13:21–22. As Plaintiff was looking to see what was happening, his phone started ringing. *Id*. at 16:1–4. He went to the front of the house and then headed back down the hallway and out the back door. *Id.* at 15:25–16:5. Plaintiff noted that his wife was also awake, but he did not know what she was doing. *Id.* at 16:5–7. He began walking along his wrap-around porch towards a patrol car and stepped off the porch. *Id.* at 16:9–12. He walked by a "big bushy tree . . . [that's] probably almost as tall as [his] house" and was "bulldogged from behind" by Threatt. *Id.* at 16:14–23.

---

[3] Plaintiff's deposition can be found at ECF No. 11-2.

3

C.     Sandra Barfield's Version of Events

Plaintiff's wife, Sandra Barfield ("Sandra"), stated that she went to bed around 10 p.m. on the night of the incident. Sandra Dep. at 18:5–7.[4] She woke up looked out the window, and saw a police vehicle. *Id.* at 32:6–12. Plaintiff's father, who shares Plaintiff's name, called around this time and told her that the police called him and asked him to go outside, but there was no one outside of his home. *Id.* at 25:13–25. Sandra was standing at the door when she saw Plaintiff step off the porch and get knocked to the ground by Threatt. *Id.* at 32:19–24. She said that Threatt came from behind a tree and hit Plaintiff "like a football player and [Plaintiff] went down." *Id.* at 33:19–25.

D.     Incident Report

The incident report provides the following, slightly paraphrased, report of the incident in question. Threatt was dispatched to 1854 Winchester Road in reference to an ongoing breach of peace between neighbors. [ECF 10-2 at 1]. Threatt spoke to Ms. Kelly shortly before having been dispatched to the area a second time for the same problem. *Id*. Ms. Kelly stated that Plaintiff was in his yard yelling and cursing across the property of several hundred yards. *Id*. The first time Threatt was dispatched, Threatt sat with Ms. Kelly for several minutes to try and hear the disturbance. *Id*. While at Ms. Kelly's house the first time, Plaintiff turned off his lights and did not make any noises. *Id*. The second time Threatt was dispatched, he sat several hundred yards from Plaintiff's house at the roadway in the dark. *Id*. Threatt heard Plaintiff yelling from his yard. *Id*. Threatt had to turn his car lights on to drive to Plaintiff's house and this took a minute. *Id*. Threatt could

---

[4] Sandra Barfield's deposition can be found at ECF No. 11-3.

not locate Plaintiff in the yard. *Id*. Threatt knocked on the door of the house, but did not get a response. *Id*. at 1–2. Threatt requested that central dispatch call Plaintiff while he walked the property trying to locate Plaintiff. *Id*. at 2.

Plaintiff came out of the house fully dressed and told Threatt he had been in bed. *Id*. at 3. Plaintiff had a "strong odor of alcoholic beverage about his person." *Id*. Plaintiff also had blood shot eyes and slurred speech. *Id*. Threatt advised Plaintiff that he had been heard yelling and was under arrest for breach of peace. *Id*. Threatt instructed Plaintiff to turn and place his hands behind his back. *Id*. Plaintiff was cuffed behind his back and checked for fit. *Id*. The cuffs were double-locked. *Id*. Threatt told Plaintiff several times to get in the car and Plaintiff refused. *Id*. Plaintiff stated he was having chest pains. *Id*. Threatt called for EMS at this time. *Id*. Plaintiff then fell down on the ground beside the car. *Id*. Threatt asked Plaintiff if he wanted to stand up and lean on the car or if he wanted to stay lying on the ground. *Id*. Plaintiff would not speak with Threatt. *Id*. Deputy Henderson then arrived on the scene. *Id*. Plaintiff would not speak to Henderson either. *Id*.

Plaintiff's wife came out several times and used profanity towards Threatt and Henderson "saying [they] were worthless, poor pieces of shit." *Id*. Plaintiff's wife stated "Y'all are Mathews fans and my husband is a head mason and you don't know who you are messing with." *Id*. Threatt advised Plaintiff's wife to stay inside or she would also be placed under arrest for breach of the peace. *Id*. EMS workers Tracey Gladden and Janett Battles arrived on the scene and checked Plaintiff. *Id*. EMS workers stated Plaintiff's blood pressure and oxygen levels were normal. *Id*. Plaintiff told EMS that Threatt and

Henderson had thrown him to the ground and would not help him get up. *Id*. Threatt advised Plaintiff that he could go with EMS, but that when he was released from the hospital, he would be taken to jail. *Id*. Plaintiff then refused transport to the hospital. *Id*. Threatt placed Plaintiff in two sets of cuffs hooked together for comfort, due to the alleged medical issues. *Id*. At this time, Threatt noticed Plaintiff had marks from the cuffs on his hands from when he fell wearing the cuffs. *Id*. Plaintiff was transferred to KCMC[5] without further incident. *Id*. The problems between the Kellys and the Barfields have been going on for nine years. *Id*.

      Deputy Henderson added the following slightly-paraphrased narrative of the incident. [ECF No. 10-2 at 3]. Henderson responded to Threatt's request for back up. *Id*. En route to Plaintiff's home, Henderson heard Threatt request that central dispatch call EMS because of Plaintiff's complaints of chest pains. *Id*. Upon arrival, Henderson observed Plaintiff lying on the ground. *Id*. Henderson heard Threatt ask Plaintiff several times if he would like for Threatt and Henderson to help him up off the ground, but Plaintiff ignored Threatt. *Id*. Henderson then asked the same question and Plaintiff ignored him. *Id*. Plaintiff's wife told Threatt and Henderson that they "were worthless, poor, and pieces of shit." She also informed them "that her husband [] was a mason and [they] didn't know who [they] were messing with because we were to[o] stupid to figure it out." *Id*. EMS arrived soon, as did Plaintiff's father. *Id*. Threatt spoke with Plaintiff's father and informed him of the situation. *Id*. EMS checked Plaintiff out and advised Threatt and Henderson that Plaintiff's vital signs were normal. *Id*. Plaintiff stated that he

---

[5] It is unclear to where "KCMC" refers.

still wished to go to the hospital. *Id*. Threatt and Henderson informed Plaintiff that he could go to the hospital, but that after the hospital cleared him, he would still go to jail because he was under arrest. *Id*. Plaintiff began to tell EMS that Threatt and Henderson threw him to the ground and would not help him up. *Id*. Plaintiff then refused to go to the hospital with EMS. *Id*. Threatt then transported Plaintiff to Kershaw County Detention Center. *Id*.

II.     Discussion

   A.     Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-

7

moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    B.    Analysis

        1.    Claims against Threatt[6]

            a.    False Arrest/Illegal Seizure

Defendants argue that Plaintiff's false arrest claim should be dismissed because Threatt had probable cause to arrest Plaintiff for breach of peace. [ECF No. 10-1 at 11–12]. Under Supreme Court precedent, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Probable cause exists if the "facts and circumstances within the officer's knowledge . . .

---

[6] Plaintiff filed a stipulation of dismissal dismissing the following claims: (1) first and second causes of action against KCSO, (2) third cause of action in its entirety, and (3) sixth cause of action in its entirety. [ECF No. 9]. Therefore, Plaintiff's remaining claims are for false arrest/illegal seizure and excessive force against Threatt and battery and illegal seizure/false imprisonment against KCSO.

are sufficient to warrant a prudent person . . . in the circumstances shown, [to conclude] that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id.* at 36.

"Probable cause requires more than 'bare suspicion,' but requires less than evidence necessary to convict." *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) (internal citations omitted). Reasonable law officers need not "resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky v. Siwinsky*, 942 F.2d 257, 264 (4th Cir. 1991). As a result, to prove an absence of probable cause, Plaintiff "must allege a set of facts which made it unjustifiable for a reasonable officer to conclude" he was involved in the charged offense. *Brown v. Gilmore*, 278 F.3d 362, 368 (4th Cir. 2002). In considering Defendants' motion, the court is required to view the facts in the light most favorable to Plaintiff. *Anderson*, 477 U.S. at 255.

The undisputed facts show that Threatt responded to Ms. Kelly's two complaints about Plaintiff yelling towards her home. When Threatt responded to the first complaint, he did not hear any noise coming from Plaintiff's yard. Threatt Dep. at 14:25–15:5. Threatt testified that when he responded to the second complaint, he turned his car lights off and heard Plaintiff yelling. [ECF Nos. 10-2 at 3; 11-1 at 9–10]. Threatt stated that he recognized Plaintiff's voice from his prior dealings with Plaintiff in responding to complaints from the Kellys and the Barfields. *Id*. Although Plaintiff testified that he had

9

been asleep when he heard Threatt beating on the door, he has not provided any evidence to dispute that Threatt heard yelling from Plaintiff's property and believed the voice to be Plaintiff's. Even if the yelling Threatt heard was not Plaintiff, the facts and circumstances within Threatt's knowledge—that Ms. Kelly had complained of Plaintiff's yelling and that Threatt recognized the voice as Plaintiff's from his prior dealings—were sufficient to warrant him to conclude that Plaintiff had breached the peace. Accordingly, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's false arrest claim.

b.     Excessive Force

Plaintiff contends that he was walking outside toward Threatt's patrol car when he was "bulldogged" from behind. Pl. Dep at 16:20–23. Plaintiff failed to submit any further testimony or description in the record of what he meant by "bulldogged." Plaintiff's wife testified that Threatt "knocked [Plaintiff] down." Sandra Dep. 32:21–24. There is no evidence in the record of any injury suffered by Plaintiff as a result of the fall. In addition, Plaintiff has not provided any evidence disputing Defendants' contention that EMS was called to the scene because Plaintiff complained of chest pains and fell down after arriving at Threatt's patrol car.

The test for excessive force in the arrest context requires "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). As the Fourth Circuit has explained, "[a] claim that an officer used excessive force during an apprehension or arrest is 'analyzed under the

Fourth Amendment and its reasonableness standard'—that is, the use of force is not excessive if the officer's actions are 'objectively reasonable' under the circumstances." *Littleton v. Swonger*, 502 F. App'x 271, 274 (4th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 395–97 (1989)). "The force used by an officer is not excessive if the officer's 'actions are objectively reasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *Gandy v. Robey*, 520 F. App'x 134, 140 (4th Cir. 2013) (citing *Graham*, 490 U.S. at 397). "To gauge objective reasonableness, a court examines only the actions at issue and measures them against what a reasonable police officer would do under the circumstances." *Id.* (quoting *Rowland v. Perry*, 41 F.3d 167, 172 (4th Cir. 1994)). The objective reasonableness test requires attention to several factors, including the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, whether he is actively resisting arrest or attempting to evade arrest by flight, and the extent of Plaintiff's injury. *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) (citing *Graham*, 490 U.S. at 496).

Even where a constitutional violation may have occurred, civil liability does not automatically attach. Rather, "[g]overnment officials are entitled to qualified immunity as a matter of law so long as they have not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gandy*, 520 F. App'x at 140 (quotations omitted). "In other words, courts ask 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Qualified immunity extends to

11

government officials' objectively-reasonable mistakes, "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Finally, "the immunity inquiry must be filtered through the lens of the officer's perceptions at the time of the incident in question." *Gandy*, 520 F. App'x at 140 (quoting *Rowland*, 41 F.3d at 173).

Accepting Plaintiff's version of the facts as true for the purposes of this motion, Threatt was reasonable in exerting force under the facts and circumstances confronting him at the time of Plaintiff's arrest. Threatt had knocked on all of Plaintiff's doors and windows and had asked a dispatcher to call Plaintiff's home, because Plaintiff had not come to the door. When Threatt saw Plaintiff, Plaintiff was fully dressed, had exited his porch, and was heading towards Threatt's patrol car. Plaintiff testified that Threatt used force against him by causing him to fall to the ground. The record is devoid of evidence that Threatt used more force than was necessary to restrain Plaintiff. Although EMS was called for Plaintiff's complaints of chest pain, the EMS workers found that his blood pressure and oxygen levels were normal. [ECF No. 10-2 at 3]. While Plaintiff initially wanted to go to the hospital, he refused to go to the hospital when Threatt informed him that he would be taken to jail once released from the hospital. *Id*.

Applying the factors set forth in *Jones*, Threatt's use of force was reasonable. Threatt was unsure of whether Plaintiff may have posed a threat to his safety or whether he was attempting to evade Threatt. The crime was not severe, but Plaintiff appears to have suffered minimal, if any, injury. On the record before the court, Plaintiff has not

submitted sufficient evidence for a reasonable juror to conclude that Threatt used an unreasonable amount of force by allegedly causing Plaintiff to fall to the ground. Therefore, the undersigned recommends the district judge grant Defendants summary judgment on Plaintiff's excessive force claim.

    2.    Claims against KCSO

        a.    Immunity

KCSO argues that Plaintiff's claims pursuant to the South Carolina Torts Claim Act ("SCTCA") are barred by the exceptions to the waiver of immunity, S.C. Code Ann. § 15-78-60(1)-(6),(20),(21),(23).  [ECF No. 10-1 at 14–15]. The burden of establishing a limitation upon liability or an exception to the waiver of immunity under SCTCA is upon the governmental entity asserting it as an affirmative defense. *Strange v. South Carolina Dep't of Highways and Pub. Transp.*, 445 S.E.2d 439, 440 (S.C. 1994). Defendants have failed to set forth any argument or facts to support their claim that KCSO is entitled to immunity on Plaintiff's SCTCA claims. Because KCSO has failed to meet its burden of establishing an exception to the waiver of immunity, it is not entitled to immunity. Additionally, KCSO waived its Eleventh Amendment immunity in this case by removing the case to federal court. *Lapides v. Board of Regents of the Univ. System of Georgia*, 535 U.S. 613, 619 (2002) (finding that a state's voluntary appearance in federal court waives sovereign immunity to claims where a state has consented to suit in its own courts for such claims).

        b.    Battery

Plaintiff has asserted a state law battery claim against KCSO. South Carolina law

provides that "a battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of degree." *Jones v. Winn-Dixie Greenville, Inc.*, 456 S.E.2d 429, 432 (S.C. Ct. App. 1995) (citation omitted). However, as discussed *supra*, Plaintiff cannot show that Defendants used unlawful force, and therefore, has not set forth a valid claim for battery. *See Roberts v. City of Forest Acres,* 902 F. Supp. 662, 671 n. 2 (D.S.C. 1995) (finding that an officer who used reasonable force in effectuating an arrest is not liable for assault and battery) (citing *Moody v. Ferguson*, 732 F. Supp. 627, 632 (D.S.C. 1989)). Because Plaintiff has not shown that Threatt's use of force was excessive or unlawful, KCSO is entitled to summary judgment on Plaintiff's battery claim.

### c. False Imprisonment

Plaintiff asserts a claim for false imprisonment against KCSO. Plaintiff cannot maintain a claim based on false imprisonment when his arrest was supported by probable cause. *Manley v. Manley*, 353 S.E.2d 312, 314 (S.C. Ct. App. 1987). For the reasons discussed *supra*, Plaintiff's arrest was based on probable cause. Therefore, the undersigned recommends that KCSO be granted summary judgment on Plaintiff's false imprisonment claim.

## III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Defendants' motion for summary judgment [ECF No. 10] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

October 30, 2014  Shiva V. Hodges
Columbia, South Carolina  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be acMs. Kellylished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).